

FILED

OCT 2 2 2015

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

4:15-cv- 4160

LUCILLE SCHULTZ,                               :

           Plaintiff,                     :

v.                                             :       PLAINTIFF'S COMPLAINT
                                                       AND DEMAND FOR JURY TRIAL
SENTINEL INSURANCE COMPANY,                    :
LTD, d/b/a THE HARTFORD,
                                               :
           Defendant.
                                               :

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

COMES NOW Plaintiff Lucille Schultz, for her Complaint against Sentinel
Insurance Company, LTD, d/b/a The Hartford, states and alleges as follows:

## Parties

1.  Plaintiff Lucille Schultz ("Lucille") is, and all relative times was, a resident of
    Sioux Falls, Minnehaha County, South Dakota.

2.  Defendant Sentinel Insurance Company, LTD, d/b/a The Hartford ("Sentinel"), is
    a Company organized outside of the State of South Dakota, with its principal place
    of business located outside the State of South Dakota.

## Jurisdiction and Venue

3.  This Court has jurisdiction under 28 § U.S.C. 1332, diversity of citizenship.

4.  The damages at issue exceed $75,000.00.

4:15-cv-_____
Plaintiff's Complaint and Demand for Jury Trial

### Statement of the Facts

5.   Lucille purchased a policy of homeowner's insurance from Sentinel, which was in effect before and after June 2014.

6.   In June 2014, Lucille's home was damaged during a hailstorm.

7.   Prior to the June 2014 hailstorm, Lucille's home did not have water infiltration issues.

8.   During the June 2014 hailstorm, or immediately thereafter, water began leaking into Lucille's home.

9.   Hail damage is a covered cause of loss under the insurance policy sold by Sentinel to Lucille.

10.  Lucille formally submitted a claim to Sentinel for the hail damage sustained in June 2014.

11.  On June 26, 2014, a representative of Sentinel, Tom Severson, inspected Lucille's home.

12.  Lucille's home has a rubber membrane roof.

13.  During the June 26, 2014 inspection, Tom Severson identified multiple spots on Lucille's roof that showed damage caused by the June hailstorm.

14.  In a letter dated July 9, 2014, Sentinel acknowledged that Lucille's home, including her roof, had been damaged by the June 2014 hailstorm.

15.  In a letter dated July 9, 2014, Sentinel stated that $213.71 was sufficient to repair the damage to Lucille's roof caused by the June hailstorm.

2

16.     The July 9, 2014 letter from the Sentinel stated that the $213.71 amount was "For minor repair to rubber membrane under rock."

17.     Then, on August 8, 2014, Sentinel sent another letter to Lucille that again acknowledged the damage caused by the June hailstorm and stated that $213.71 was sufficient to repair the damage caused to Lucille's roof by the June hailstorm.

18.     The August 8, 2014 letter from Sentinel also stated that the $213.71 amount was "For minor repair to rubber membrane under rock."

19.     In a July 6, 2015 letter, Sentinel acknowledged that it received a letter from a HAAG-Certified Inspector, dated July 4, 2015, that explained that the spot repairs suggested in Sentinel's July 9, 2014 and August 8, 2014 letters would not protect Lucille's home because such repairs were temporary and inadequate due to the roof's age and condition.

20.     The July 6, 2015 letter also explained that the gravel ballast was imbedded into the EPDM rubber membrane due to its age and heat, which meant that removal of the ballast during any repair work would cause additional damage to Lucille's roof.

21.     The July 6, 2015 letter concluded that as a result of the ineffective nature of a spot repair to Lucille's roof for the damage caused by the June 2014 hailstorm, the roof could only be properly repaired if it was replaced.

22.     Sentinel therefore knew, no later than July 6, 2015, that its suggested spot repairs, for which Sentinel paid Lucille $213.71, were not appropriate because they would not adhere to the underlying EPDM.

23.     Sentinel also knew, no later than July 6, 2015, that its suggested spot repairs, for which the Sentinel paid $213.71 to Lucille, would not work because the gravel ballast was imbedded into the EPDM and removal of the ballast to make the repairs would cause additional damage to the EPDM.

4:15-cv--_____
Plaintiff's Complaint and Demand for Jury Trial

24.    In response to the July 6, 2015 letter from Lucille that explained why the suggested
       spot repairs would not work, Sentinel requested another inspection of Lucille's
       home.

25.    That re-inspection was performed on July 10, 2015, by Stan Johnson.

26.    Stan Johnson wrote a report dated July 20, 2015.

27.    Stan Johnson's report did not refute the prior HAAG-Certified Inspector's opinion
       that the roof could only be properly repaired if it was replaced.

28.    Stan Johnson's report did not address whatsoever the HAAG-Certified Inspector's
       opinion that the roof could only be properly repaired if it was replaced.

29.    Stan Johnson's report acknowledged that the work to Lucille's roof was only
       temporary.

30.    In an August 12, 2015 letter sent to Sentinel, Sentinel was made aware that Stan
       Johnson's report did not address the fact that spot repairs would not properly repair
       Lucille's roof or that moving the gravel on the EPDM to make such repairs would
       result in additional damage to the EPDM because they were embedded due to age
       and heat.

31.    Because Stan Johnson's report did not address the facts in Paragraph 19-21 above,
       and because the spot repairs were not appropriate under the circumstances,
       Sentinel was asked in the August 12, 2015 letter to identify a local contractor who
       would be willing to perform the spot repairs and warranty such work.

32.    In response to the August 12, 2015 letter, Sentinel identified Rainbow
       International.

33.    A representative of Rainbow International went to Lucille's home on September 9,
       2015.

4

34.   In an October 8, 2015 email, Sentinel stated that Rainbow International "will not be accepting the job as most of the repairs have already been completed. They did not write an estimate, as, again, they will not accept the job due to most of the repairs being completed."

35.   Upon information and belief, Rainbow International did not, as of September 9, 2015, and does not currently, work on EPDM roofs.

36.   Because Rainbow International does not work on EPDM roofs, it did not agree to perform the spot repairs insisted on by Sentinel, let alone warranty such work.

37.   Sentinel has repeatedly failed to address, let alone refute, the fact that the recommended spot repairs to Lucille's roof as a result of the June 2014 hailstorm are not appropriate repairs.

38.   Sentinel has repeatedly failed to address, let alone refute, the fact that moving the gravel on the EPDM to make such repairs would result in additional damage to the EPDM because they were embedded due to age and heat.

39.   $213.71 is not a reasonable amount of money to fully fix the damage to Lucille's roof caused by the June 2014 hailstorm.

40.   Sentinel knows or recklessly disregards the fact that $213.71 was not sufficient to properly repair Lucille's roof.

41.   Sentinel had a duty to perform a reasonable investigation of Lucille's claim.

42.   Part of each premium Sentinel charges includes a portion for the expenses required to properly investigate claims.

43.   A reasonable investigation requires an insurer to look for reasons to pay, and not just reasons not to pay.

4:15-cv--_____
Plaintiff's Complaint and Demand for Jury Trial

44.   In evaluating Lucille's claim, Sentinel had a duty to give just as much
      consideration to her interests as it gave to its own interests.

45.   Sentinel had a duty to assist Lucille with identifying facts that support a payment
      that was sufficient to properly fix Lucille's roof.

46.   Sentinel had a duty to inform Lucille of any information obtained during the
      investigation of her claim regardless of whether the information would result in an
      increase or decrease of the amount needed to fully fix Lucille's roof.

47.   Sentinel could not eliminate its duty of good faith and fair dealing by delegating its
      duty to an agent.

48.   Sentinel is responsible for the investigation and evaluation of Lucille's claim by its
      agents.

49.   Sentinel has no reasonable basis to believe that $213.71 is sufficient to properly
      repair the damage to Lucille's roof.

50.   Sentinel's claims handling process, as described in this Complaint, is designed to
      deny paying Lucille the full amount owed under her insurance policy.

51.   Sentinel's claims handling process, as described in this Complaint, is designed to
      delay paying Lucille the full amount owed under her insurance policy.

52.   Lucille is 89 years of age.

53.   As a result of the refusal to pay the full amount of benefits owed under the
      insurance policy in a timely fashion, Lucille's home has sustained additional
      damage.

54.    On August 27, 2015, Lucille's home sustained additional water penetration damage.

55.    Sentinel was made aware of the additional water penetration damage in a September 1, 2015 email.

56.    On September 9, 2015, Sentinel stated that Lucille would have to file a separate claim and satisfy a separate deductible.

57.    As a result of Sentinel's claims handling process, as described in this Complaint, Lucille has been damaged as follows:

    a.    Lucille has been deprived of the benefits of the contract and of the timely fixing of her home depending on the current costs of materials and labor.

    b.    Lucille has experienced aggravation, fear, annoyance, frustration, distress, mental and emotional pain and suffering, and inconvenience due to the wrongful denial and delay of her claim.

    c.    Lucille was forced to retain a lawyer at her personal expense.

    d.    Lucille's home has suffered additional water infiltration damage as a result of Sentinel's refusal to pay the full amount owed under her insurance policy to properly fix the damage caused by the June 2014 hailstorm.

## Count I
### *(Breach of Contract)*

58.    Lucille realleges and restates Paragraphs 1-57 of this Complaint and hereby incorporates them by reference as if fully set forth herein.

59.    Sentinel has breached the contract of insurance with Lucille by failing to pay the full amount of benefits owed under the policy.

4:15-cv-_____
Plaintiff's Complaint and Demand for Jury Trial

## Count II
### (*Bad Faith*)

60.  Lucille realleges and restates Paragraphs 1-59 of this Complaint and hereby incorporates them by reference as if fully set forth herein.

61.  Sentinel intentionally or recklessly utilized a claims handling process designed to maximize its profits at its insureds' expense.

62.  Sentinel intentionally or recklessly utilized a claims handling process designed to delay the payment of benefits owed under the terms of the policy.

63.  Sentinel intentionally or recklessly utilized a claims handling process designed to deny the full payment of benefits owed under the terms of the policy.

## Count III
### (*Punitive Damages*)

64.  Lucille realleges and restates Paragraphs 1-63 of this Complaint and hereby incorporates them by reference as if fully set forth herein.

65.  Sentinel acted with oppression, fraud, or malice, and punitive damages are necessary and appropriate in order to punish and deter.

## Count IV
### (*Vexatious Refusal to Pay*)

66.  Lucille realleges and restates Paragraphs 1-65 of this Complaint and hereby incorporates them by reference as if fully set forth herein.

67.  Sentinel unreasonably and vexatiously refused to pay amounts owing under the policy, requiring this Court to award Plaintiff's reasonable attorneys' fees as authorized under SDCL § 58-12-3.

8

4:15-cv--_____
Plaintiff's Complaint and Demand for Jury Trial

## **Requested Relief**

WHEREFORE, Lucille prays that this Court:

1.     Enter judgment in Lucille's favor;

2.     Award Lucille her damages, plus prejudgment interest thereon;

3.     Award Lucille her attorneys' fees and costs as allowed by law; and

4.     Grant such other further relief as may be just and proper.

## **Demand for Jury Trial**

Lucille demands a trial by jury with regard to any and all questions of fact pertaining to all claims and/or counterclaims asserted in the above-entitled matter.

Dated this 21st day of October, 2015.

FULLER & WILLIAMSON, LLP

Derek A. Nelsen
Eric T. Preheim
7521 South Louise Avenue
Sioux Falls, SD 57108
Phone:(605) 333-0003
Fax:    (605) 333-0007
Email: dnelsen@fullerandwilliamson.com
        epreheim@fullerandwilliamson.com
*Attorneys for Plaintiff Lucille Schultz*

9