UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| LUCILLE SCHULTZ,<br><br>                    Plaintiff,<br><br>          vs.<br><br>SENTINEL INSURANCE COMPANY, LTD,<br><br>                    Defendant. | 4:15-CV-04160-LLP<br><br><br>ORDER ON PLAINTIFF'S MOTION TO COMPEL<br><br>DOCKET NO. 18 |

**INTRODUCTION**

This matter is before the court on plaintiff Lucille Schultz's complaint pursuant to the court's diversity jurisdiction, 28 U.S.C. § 1332.  <u>See</u> Docket No. 1.  Ms. Schultz has filed a motion seeking an order from the court compelling defendant Sentinel Insurance Company, Ltd. ("Sentinel") to provide certain discovery.  <u>See</u> Docket No. 18.  Sentinel resists the motion.  <u>See</u> Docket No. 25. The presiding district court, the Honorable Lawrence L. Piersol, referred Ms. Schultz's motion to this magistrate judge for decision.

**FACTS**

The following facts are largely taken from Ms. Schultz's complaint and the parties' briefs on the instant motion to compel.  No indication by the court

is given as to the veracity of these allegations.  They are described merely to provide context in setting forth the claims asserted.

A damaging hail storm hit Sioux Falls, South Dakota, in June, 2014. Ms. Schultz submitted a claim to Sentinel under her homeowner's insurance policy for damage to her roof from that storm.  Sentinel initially approved the claim, paying Ms. Schultz around $213 for spot repairs after an inspection by its adjustor, Tom Seversen, verified damage to the roof.  Later, Ms. Schultz provided Sentinel with a report from her own inspector asserting spot repairs were ineffective and her entire roof needed to be repaired at a cost of $17,726. Thereafter, Sentinel denied her claim.

After receiving Ms. Schultz's inspector's report, Sentinel hired Stanley Johnson to conduct another inspection of Ms. Schultz's roof on Sentinel's behalf.  Mr. Johnson's report did not address the issue raised by Ms. Schultz's inspector that spot repairs would not be effective in fixing her roof.  In its initial disclosures required by Federal Rule of Civil Procedure 26, Sentinel identified Mike Martin and Jerry Vander Plaats, in addition to Severson and Johnson, as estimators or adjusters having relevant knowledge of the parties' claims or defenses in this case.  See Docket No. 20-6 at p. 3.

Ms. Schultz filed a complaint in this court against Sentinel alleging breach of contract, bad faith, punitive damages, and vexatious refusal to pay. See Docket No. 1.  The parties in this action stipulated to the entry of a protective order early on.  See Docket No. 17.  The order applies to "confidential documents or information" and defines that phrase to include proprietary

2

business information including financial information, training materials,

contracts and agreements, non-public sensitive material, testimony given at a

deposition, and personal financial, health, medical, psychological, psychiatric,

rehabilitation or counseling records of parties and non-parties.  Id. at pp. 1-2,

4, ¶¶ 1, 7.  The order provides that a party may designate documents,

testimony or information as confidential.  Id. at p. 2, 4, ¶¶ 2, 7.

Once information is designated as "confidential," the receiving person

may not copy or reproduce it in any form and may not disclose the content or

substance of the information except to counsel for plaintiff or defendant and

their regular employees in the preparation of the case for trial, parties to the

action (including corporate representatives), expert and fact witnesses who may

be called to give depositions or testimony, and the court and court staff.  Id. at

pp. 2-3, ¶ 4.  Persons to whom "confidential" information is disclosed are

forbidden to further disclose the information or to make any other use of the

information except as provided in paragraph 4.  Id. at p. 3, ¶ 5.  If

"confidential" documents are filed with the court, they must be filed under seal.

Id. at p. 4, ¶ 8.

When permitted disclosure of "confidential" information is being made to

parties to the litigation, regular employees or agents of counsel for the parties,

or to fact or expert witnesses, counsel must inform the person to whom the

disclosure is being made that they are prohibited from disclosing the

information to any other person.  Id. at pp. 3-4, ¶ 6.  Further, counsel making

the disclosure must provide the person to whom the disclosure is made with a

3

copy of the protective order and tell the person that violation of the order will subject the person to court sanctions. Id. at p. 4. The protective order does not affect admissibility of a "confidential" document at trial. Id. at pp. 5-6, ¶ 12.

Information subject to the attorney-client privilege or the work-product doctrine is subject to special retraction provisions. Id. at pp. 4-5, ¶ 9. If a privileged document is inadvertently produced, the party may, if they act quickly enough, retract the document. Id. If this occurs, the parties essentially agree to act as if the information was never produced. Id.

"Confidential" documents must be destroyed at the conclusion of the litigation or returned to the party from whom they emanated. Id. at p. 5, ¶ 10. The court retains jurisdiction post-termination of the action to resolve disputes regarding the provisions of the protective order. Id. at p. 5, ¶ 11.

If someone disagrees with a "confidential" designation, that person may notify the designator of the objection. Id. at p. 2, ¶ 3. The parties then agree to make a good-faith effort to resolve their disagreement about the confidentiality of the information. Id. If the disagreement is not resolved, the matter is submitted to the court via motion. Id. The person who designated the information as "confidential" need not disclose the information until the court rules on whether it is "confidential." Id.

## DISCUSSION

### A.   Meet and Confer Requirement

Before a party may make a motion to compel another party to make discovery or disclosure, the movant must certify that they have in good faith conferred or attempted to confer with the opposing party from whom the discovery or disclosure is sought in an attempt to resolve the disagreement without court intervention.  See FED. R. CIV. P. 37(a)(1).  Ms. Schultz alleges that she has complied with this requirement.  Sentinel does not dispute that assertion, though it insinuates that Ms. Schultz was unreasonable in the dispute resolution meetings.  The court considers Ms. Schultz's motion on its merits.

### B.   Standards Applicable to Discovery

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court:

> Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within the scope of discovery need not be admissible in evidence to be discoverable.

See FED. R. CIV. P. 26(b)(1).  Rule 26 contains specific limitations relative to electronic discovery and other objections to providing discovery:

> (B)   *Specific Limitations on Electronically Stored Information.*  A party need not provide discovery of electronically stored information from sources that the party identifies as not

5

reasonably accessible because of undue burden or cost.  On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify the conditions for the discovery.

(C)   *When Required.*  On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

    (i)   the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

    (ii)   the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

    (iii)   the proposed discovery is outside the scope permitted by Rule 26(b)(1).

<u>See</u> FED. R. CIV. P. 26(b)(2)(B) and (C).

A party claiming a privilege as to requested discovery has the burden of proving the basis for the application of the privilege:

When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

    (i)   expressly make the claim; and

    (ii)   describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

<u>See</u> FED. R. CIV. P. 26(b)(5)(A).

6

If a party fails to respond to a proper request for discovery, or if an evasive or incomplete response is made, the party requesting the discovery is entitled to move for a motion compelling disclosure after having made a good faith effort to resolve the dispute by conferring first with the other party.  See Fed. R. Civ. P. 37(a).

The scope of discovery under Rule 26(b) is extremely broad.  See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-37 (1970) (hereinafter "Wright & Miller").   The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.  To that end, either party may compel the other to disgorge whatever facts he has in his possession."  8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08 (1947)). The Federal Rules distinguish between discoverability and admissibility of evidence.  Fed. R. Civ. P. 26(b)(1), 32, and 33(a)(2) & (c).  Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial.  These considerations are not inherent barriers to discovery, however.

"Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings.  Relevancy ... encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 at *1 (D. Neb. March 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437

7

U.S. 340, 351 (1978)).  The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)).  "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

Discoverable information itself need not be admissible at trial; rather, the defining question is whether it is within the scope of discovery. See FED. R. CIV. P. 26(b)(1).  Additionally, the court may limit the frequency and extent of discovery. See FED. R. CIV. P. 26(b)(2); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

Rule 34 of the Federal Rules of Civil Procedure governs requests for the production of documents and provides that a party may ask another party to permit copying of documents "in the responding party's possession, custody, or

8

control."  See FED. R. CIV. P. 34(a)(1).  The concept of documents in a party's "possession" or "custody" is clear enough, but the concept of documents in a party's "control" is not obvious upon a reading of the rule.

The rule that has developed is that if a party "has the legal right to obtain the document," then the document is within that party's "control" and, thus, subject to production under Rule 34.  See 8A Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Fed. Practice & Procedure, §2210, at 397 (2d ed. 1994) (hereinafter "Fed. Practice & Procedure").  "Because a client has the right, and the ready ability, to obtain copies of documents gathered or created by its attorneys pursuant to their representation of that client, such documents are clearly within the client's control."  American Soc. for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus, 233 F.R.D. 209, 212 (D.D.C. 2006) (citing Poole ex rel. Elliott v. Textron, Inc., 192 F.R.D. 494, 501 (D. Md. 2000); and Poppino v. Jones Store Co., 1 F.R.D. 215, 219 (W.D. Mo. 1940)).

Merely because documents gathered by an attorney are subject to the client's control does not, however, automatically mean they are discoverable. The work product doctrine and the attorney-client privilege still apply and may be asserted in opposition to discovery, along with the appropriate privilege log. Ringling Bros., 233 F.R.D. at 211-213.

## C.    Substantive Law Applicable to Ms. Schultz's Claims

In a case pending in federal court pursuant to diversity jurisdiction, state law applies to issues of substantive law; in this case, South Dakota state law

9

applies.  Erie R.R. v. Tompkins, 304 U.S. 64 (1938).  To prove a bad faith cause of action, Ms. Schultz must show Sentinel had no reasonable basis for denying her claim for insurance benefits, and Sentinel acted with knowledge or a reckless disregard as to the lack of a reasonable basis for the denial of benefits. See Sawyer v. Farm Bureau Mut. Ins. Co., 2000 S.D. 144, ¶ 18, 619 N.W.2d 644, 649.  "In a bad faith case, 'the insured must show an absence of a reasonable basis for denial of policy benefits [or failure to comply with a duty under the insurance contract] and the knowledge or reckless disregard [of the lack] of a reasonable basis for the denial.' "  Mudlin v. Hills Materials Co., 2007 S.D. 118, ¶ 6, 742 N.W.2d 49, 51 (brackets in original) (quoting Phen v. Progressive N. Ins. Co., 2003 S.D. 133, ¶ 24, 672 N.W.2d 52, 59).  Bad faith is an issue of fact for the jury.  Isaac v. State Farm Mutual Auto. Ins. Co., 522 N.W.2d 752, 758 (S.D. 1994).  The jury should determine whether the insurer acted in bad faith "based on the facts and law available to [the insurer] at the time it made its decision to deny coverage."  Id.

In awarding punitive damages, a jury is to evaluate:  (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the harm (or potential harm) suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.  Roth v. Farner-Bocken Co., 2003 S.D. 80, ¶ 46, 667 N.W.2d 651, 665-66 (citing State Farm v. Campbell, 538 U.S. 408, 418 (2003)).  In evaluating these factors, it is

relevant whether the harm that was caused to Ms. Schultz resulted from a company policy or practice.  Id. at ¶ 65, 667 N.W.2d at 669.

Under South Dakota law, contract interpretation is a question of law. Cornelius v. Nat'l Cas. Co., 2012 S.D. 29, ¶ 6, 813 N.W.2d 167, 169.  To prevail on her breach of contract claim, Ms. Schultz must show (1) an enforceable promise; (2) that Sentinel breached that promise; and (3) she suffered damages as a result of Sentinel's breach.  See Guthmiller v. Deloitte & Touche, LLP, 2005 S.D. 77, ¶ 14, 699 N.W.2d 493, 498.

**D.    Ms. Schultz's Discovery Requests**

**1.    Proportionality is Not a New Requirement**

Citing the amended version of Rule 26(b)(1), Sentinel argues that the discovery at issue in this motion should be disallowed because it is not "proportional to the needs of the case."

Rule 26 was amended (in part) as follows:

| OLD RULE 26(b)(1) and (b)(2)(C) | NEW RULE 26(b)(1) |
|---|---|
| **Discovery Scope and Limits.** | **Discovery Scope and Limits.** |
| ***Scope in General.***  Unless otherwise limited by court order, the scope of discovery regarding any nonprivilged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved | ***Scope in General.***  Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the |

| | |
|---|---|
| in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonable calculated to lead to the discovery of admissible eveidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).<br><br>. . .<br><br>(b)(2)(C) *When Required.*  On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:<br><br>. . .<br><br>(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. | issues, and whether the burden or expense of the proposed discovery out- weighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable. |

Although Sentinel seizes on the "proportional to the needs of the case" language in the amended version of Rule 26(b)(1) as a requirement new to discovery in federal court, as can be seen by comparing the highlighted portions of both rules above, the proportional requirement was already a part of Rule 26, it was just codified previously in subsection (c).  Most of what appeared in subsection (b)(2)(C) of old Rule 26 has been in effect for the last 33 years, since 1983, so it is hardly new.  See FED. R. CIV. P. 26(b) Advisory Committee's note to 2015 amendment.  Thus, as to this particular change, the

only change rendered by the amendment was to move the proportional requirement from subsection (b)(2)(C) up to subsection (b)(1). [1]

The amended rule also specifies one additional factor to be considered in determining proportionality:  the parties' access to relevant information.  This factor definitely favors Sentinel, who "holds all the cards" on the discovery sought by Ms. Schultz.

The above comparison and holding that "proportionality" is not a new requirement was previously set forth by this court in an opinion in Gowan v. Sentinel Ins. Co., No. 5:14-cv-05025-LLP, 2016 WL 126746 at *5 (D.S.D. Jan. 11, 2016).  Sentinel asks the court to reverse its position expressed in Gowan "in light of the accumulating commentary and legal authority" that it believes holds to the contrary.  See Docket No. 25 at p. 8, n.3.  None of the legal opinions cited by Sentinel are to the contrary of this court's holding, however.

Sentinel cites Sprint Commc'ns L.P. v. Crow Creek Sioux Tribal Court, 4:10-cv-04110-KES, 2016 WL 782247 at *4 (D.S.D. Feb. 26, 2016).  However, although Judge Schreier quoted Rule 26(b)(1) in her opinion, she never held that the proportionality requirement was new or worked a dramatic change in existing law.  See also Salazar v. McDonald's Corp., 2016 WL 736213 at *2 (N.D. Cal. Feb. 25, 2016) (same).  Similarly, the court in Herrera-Velazquez v. Plantation Sweets, Inc., 2016 WL 183058 at *4 n.6 (S.D. Ga. Jan. 14, 2016),

---

[1] The proportionality requirement was first codified in 1983 and was part of the scope of discovery described in part (b)(1), as it is now after the 2015 amendments.  However, in 1993, the proportionality requirement was shuffled to part (b)(2)(C) of the Rule dealing with the court's  power to limit discovery.  Thus, the 2015 amendment simply restores the provision to part (b)(1) of the rule, where it first appeared.

acknowledged that the proportionality requirement was simply moved, and held that "the 'burdens to show undue burden or lack of proportionality have not fundamentally changed' compared to the earlier version of the Rule."  The court in Henry v. Morgan's Hotel Group, Inc., 2016 WL 303114 at *3 (S.D.N.Y. Jan. 25, 2016), acknowledged that proportionality was previously part of the rule and stated, "[u]nder the amended Rule, '[r]elevance is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.' " (quoting State Farm Mut. Auto. Ins. Co. v. Fayda, 2015 WL 7871037 at *2 (S.D.N.Y. Dec. 3, 2015)).

The authorities cited by Sentinel as allegedly contrary to this court's holding in Gowan are not contrary.  The other two citations by Sentinel in its brief are secondary authority and merely commentary.  The citations are not by courts applying the amended rule in the real world against real facts. Furthermore, they are not in keeping with the Advisory Committee's own notes to the amended Rule.

When the proportionality requirement was first instituted in 1983, the accompanying Advisory Committee notes do state that one of the purposes of the amendment was to "deal with the problem of over-discovery" and to "guard against redundant or disproportionate discovery."  See FED. R. CIV. P. 26, 1983 Advisory Committee Notes to Subdivision (b).  In applying the proportionality requirement, the Committee counseled that one of its concerns was "the limitations on a financially weak litigant to withstand extensive opposition to a

14

discovery program." Id.  Furthermore, the Committee acknowledged that often proportionality cannot be measured solely in terms of the money damages at stake, and that often philosophic, social, or institutional public policy considerations might bear on the question of the value of the case.  Id.

The Advisory Committee Notes to the 2015 amendment to Rule 26 state explicitly that the proportionality requirement is simply being moved from one subsection of the Rule to another.  See FED. R. CIV. P. 26, 2015 Advisory Committee Notes.  The 2015 Advisory Committee relied extensively on the 1983 Advisory Committee Notes in explaining the purpose and intent of the proportionality requirement.  Id.  Almost the entirety of the third paragraph in the 2015 Notes (cited by Sentinel) is a verbatim quote from the 1983 Committee Notes.  Id.

The more things change, the more they stay the same.  Since proportionality has been a requirement under the scope of discovery allowed by Rule 26 for 33 years (including the requirement that the parties themselves bear some of the obligation of self-regulating proportionality when they sign and serve discovery requests—see Rule 26(g) and 1983 Advisory Committee Notes to Rule 26(g)), the court declines to reverse its holding in Gowan as Sentinel requests.  The rule, and the case law developed under the rule, have not been drastically altered.  Any case decided after 1983 would necessarily have included consideration of the proportionality requirement.

Finally, Sentinel repeatedly refers to the value of Ms. Schultz's claim as a $17,000 claim and repeatedly stresses Ms. Schultz's breach of contract claim

in arguing that the discovery requested by Ms. Schultz is disproportionate to the value of her case.  The court applies the proportionality requirement built into Rule 26, but rejects Sentinel's characterization of the value of Ms. Schultz's case as a $17,000 case that benefits her alone.

Rule 26 requires the court to consider, in regard to proportionality, not only the amount of damages at stake, but also the importance of the interests in the case, the parties' access to relevant information, the parties' resources, how important the discovery is to the issues, and whether the burden of producing the discovery outweighs its likely benefit.  See FED. R. CIV. P. 26(b)(1).  The Advisory Committee notes stress that public policy concerns, philosophic, social, or institutional matters are to be considered and may dwarf the consideration indicated by the "relatively small amounts of money or no money at all" that may be at stake in the litigation.  See FED. R. CIV. P. 26(b)(1), 2015 Advisory Committee notes.

Ms. Schultz, as discussed above, has asserted a bad faith claim and a claim for punitive damages.  See Docket No. 1.  Her theory of her bad faith claim is that Sentinel's denial of her claim was part of a larger, company-wide culture of knowingly denying valid claims in order to profit therefrom.  It remains to be seen whether Ms. Schultz will prevail on this claim, but if she does, her claim is about many victims of an unscrupulous claims-handling practice.  As a practical matter, most insureds who are unfairly treated by Sentinel will not have the fortitude, motivation, or luck to be able to bring suit. If punitive damages are awarded, Ms. Schultz has the potential to affect

16

Sentinel's alleged business practices and to remedy the situation for many insureds, not just herself.  It is this "value" of the case the court considers when evaluating the proportionality of the discovery Ms. Schultz seeks, in addition to the other factors set forth in Rule 26.

### 2.      General Prefatory Objections

At the beginning of Sentinel's responses to Ms. Schultz's interrogatories and requests for production of documents, Sentinel states a litany of "Introductory Statement[s] and General Objections."  See Docket No. 20-1 at pp. 1-3.  Without reproducing all three pages of "general objections," the court notes that these objections purport to include objections based on confidentiality, attorney-client privilege and attorney work-product doctrine. Id.

The court overrules these objections entirely as to each and every discovery response that is preceded by this litany of general objections.  The Federal Rules of Civil Procedure require a party objecting to discovery to show specifically how each discovery request is irrelevant or otherwise not subject to discovery.  Kooima v. Zacklift Intern. Inc., 209 F.R.D. 444, 446 (D.S.D. 2002). See also FED. R. CIV. P.  33(b)(4), 34(b).  A party asserting a privilege as to requested discovery must identify the privilege being asserted, then "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  See FED. R. CIV. P. 26(b)(5).  Sentinel's boilerplate "general objections" fail to preserve

any valid objection at all because they are not specific to a particular discovery request and they fail to identify a specific privilege or to describe the information withheld pursuant to the privilege.

### 3.    Interrogatory Number 24

Ms. Schultz's interrogatory number 24 asked the following:

> In the last ten (10) years, has Sentinel been a party in a civil lawsuit alleging insurance bad faith or unfair claims processing?  If so, identify the case by name, court, and trial docket number, and indicate the substance of the allegations and the outcome of the case.

See Docket No. 20-1 at p. 21.  Sentinel at first responded to the interrogatory as follows:

> Defendant objects to Interrogatory No. 24 on the grounds that it seeks information not relevant to any party's claims or defenses and that it is unduly broad and overly burdensome.  Without waiving these objections, Defendant states that there have been no such property-related claims in the time period specified.

See id. at pp. 21-22 (dated Feb. 15, 2016).

A month later, Sentinel filed a "supplemental and revised" response to interrogatory number 24 that provided as follows:

> Defendant objects to Interrogatory No. 24 on the grounds that it seeks information not relevant to any party's claims or defenses, that it is unduly broad and overly burdensome, and that it violates Fed. R. Civ. P. 26(b)(1) because it is disproportionate to the needs of the case.  Without waiving these objections, Defendant states that information responsive to this request for lawsuits filed since 2009 is produced herewith.  Defendant states that it has not maintained responsive information prior to 2009, nor does it maintain the "substance of the allegations and the outcome of the case" in an electronically searchable format.

See Docket No. 20-2 at pp. 2-3 (Mar. 16, 2016).

The attorneys for both parties conferred over this discovery dispute on March 29, 2016.  On April 5, 2016, Sentinel provided a spreadsheet of prior bad faith and unfair-claim practices cases filed against it and the Hartford.[2] See Letter from Sentinel dated April 5, 2016, Docket No. 20-5; Spreadsheet at Docket No. 20-9 (under seal).

The spreadsheet contains nine columns as follows:  Case/Matter name, Case Docket Number, Allegations, Summary of Case, Disposition, Nature of Claim, State, Issues, and Court/County.  See Docket No. 20-9.  The columns for "summary of the case," "disposition," and "issues" are blank for all cases listed.  Id.  The column for allegations states only general titles of claims such as "breach of contract," "bad faith" and "unfair claim practices."  Id.  The "nature of claim" column reads "property (homeowners)" for every listed case. Ms. Schultz objected that the spreadsheet did not indicate what the substance of the allegations made in each lawsuit was, failed to indicate the outcome of the case, and limited the information to homeowners property insurance claims instead of including all property claims.

Ms. Schultz filed the instant motion to compel on April 13, 2016.  See Docket No. 18.  Nine days later, Sentinel offered to provide Ms. Schultz with copies of 144 complaints and the accompanying docket sheets in connection with interrogatory number 24.  Ms. Schultz agreed that the complaints would explain the allegations in the case, but asserted the docket sheets would not reflect the outcome of the case unless there was jury verdict.  Ms. Schultz

---

[2] Sentinel does business as The Hartford.

asked that Sentinel provide the complaints.  Sentinel has not as of this date provided any of the complaints it offered to provide.  The issue regarding the outcome of the cases was never resolved.

This issue is not a new one.  Evidence of past bad faith claims and unfair claims processing claims are routinely asked for and routinely produced, or ordered to be produced, in this district.  See e.g. Lillibridge v. Nautilus Ins. Co., 2013 WL 1896825 at **5-6 (D.S.D. May 3, 2013); Kirschenman v. Auto-Owners Ins., 280 F.R.D. 474, 489 (D.S.D. 2012); Beyer v. Medico, 5:08-cv-05058-JLV, Docket No. 61, at pp. 13-114 (D.S.D. Nov. 13, 2009).  And they are not limited to the exact type of claim presented by the plaintiff in the case—i.e. property only, first-party only, weather-related only.  See Lillibridge, 2013 WL 1896825 at *5.

That is because, in order to prove bad faith, the plaintiff must show that the insurance company unreasonably investigated or denied a claim knowing that there was coverage, or acted with reckless disregard to whether the facts indicated coverage.  Id. (citing Dakota, Minnesota & Eastern RR Corp. v. Acuity, 771 N.W.2d 623, 632 (S.D. 2009)).  To prove punitive damages, the plaintiff must show the insurance company acted with malice, actual or presumed.  Id. (citing Bertelsen v. Allstate Ins. Co., 796 N.W.2d 685, 698-99 (S.D. 2011)).  Relevant to the issue of punitive damages is whether the insurance company engaged in a pattern or practice of conduct that caused harm to those who are financially vulnerable.  Id. (citing Roth v. Farner-Bocken Co., 667 N.W.2d 651, 666 (S.D. 2003)).  Evidence of other claims against

20

Sentinel alleging bad faith or unfair claims practices is relevant to the *prima facie* claim of bad faith as well as to Ms. Schultz's punitive damages claim.

Sentinel claims it maintains information in an electronically searchable format only going back to the year 2009.  However, the Federal Rules do not limit a party's burden to produce relevant information to only that information stored in a searchable electronic data base.  The court grants Ms. Schultz's motion to compel Sentinel to answer interrogatory number 24 as follows:  for each claim of bad faith or unfair claims practices asserted against Sentinel in the last 10 years, Sentinel shall provide the complaint and answer (including any amended complaints and amended answers), the docket sheet, and copies of any dispositive motions and responding briefs, as well as a brief summary of the outcome of the case.[3]  Sentinel is reminded in this regard that information in its "custody, possession and control" includes information in the files of the lawyers who represented Sentinel in these prior cases.  American Soc. for the Prevention of Cruelty to Animals, 233 F.R.D. at 212 (citing Poole ex rel. Elliott, 192 F.R.D. at 501; and Poppino, 1 F.R.D. at 219); 8A Fed. Practice & Procedure, § 2210, at 397.  Due diligence on Sentinel's part should include an inquiry to counsel to attempt to obtain the documents it is now being ordered to produce.[4]

---

[3] Confidential settlement agreements need not be produced at this juncture.

[4] Sentinel does not assert the attorney-client privilege or work-product doctrine as to these requested documents.  Nor could it.  By their very nature, the court is ordering production of only those documents found in a public court filing. If any privilege previously attached to the documents, the privilege would have been waived by the act of filing the document in a public court docket.

### 4.      Requests for Production of Documents Nos. 4 and 5

Ms. Schultz's request for production of documents number 4 stated:

> Produce the personnel files—which means any and all documents
> related to the individual's employment relationship with, and job
> performance for, Sentinel—of all personnel involved with
> Mrs. Schultz's claim and all supervisors in the chain of command
> above those personnel, up to the head of the claims department.
> You may redact or withhold social security numbers, health and
> life insurance, condition, or treatment information, and bank,
> credit card, or other financial account numbers for former and
> current employees.

See Docket No. 20-1 at p. 23. Sentinel initially asserted boilerplate objections

that the request was irrelevant, overly broad and unduly burdensome.  It then

stated it would produce the personnel files only for those two employees who

directly handled plaintiff's claim "subject to the entry of a protective order."  Id.

Sentinel then filed a supplemental response wherein it agreed to provide

personnel documents for two claim representatives, Cynthia Bejarano and

Yesenia Salgado, and two supervisors, Iveree Hoth and Joseph Gray.  See

Docket No. 20-2 at p. 3.

Ms. Schultz's request for documents number 5 stated:

> Produce all documents related to compensation, including
> bonuses, stock compensation, or any other remuneration, for all
> employees involved in Mrs. Schultz's roof-hail claim and their
> supervisors, up to the head of the claims department. You may
> redact or withhold social security numbers, health and life
> insurance, condition, or treatment information, and bank, credit
> card, or other financial account numbers for former and current
> employees.

See Docket No. 20-1 at pp. 23-24.  Sentinel asserted boilerplate objections that

the request was irrelevant, overly broad and unduly burdensome.  It then

stated it would produce compensation-related documents only for those two

22

employees who directly handled plaintiff's claim "subject to the entry of a protective order."  Id.  Sentinel then filed a supplemental response wherein it agreed to provide compensation-related documents for two claim representatives, Cynthia Bejarano and Yesenia Salgado, and two supervisors, Iveree Hoth and Joseph Gray.  See Docket No. 20-2 at p. 3.

Personnel files have routinely been held proper subjects of discovery in this district in bad faith cases from the claims handler up to the head of the claims department.  Hill v. Auto Owners Ins. Co., 2015 WL 1280016 at *8-9 (D.S.D. Mar. 20, 2015); Lyon v. Bankers Life & Cas. Co., 2011 WL 124629 at *8 (D.S.D. Jan. 14, 2011); Swigart v. Progressive Classic Ins. Co., 2005 WL 1378754 at *1 (D.S.D. Apr. 29, 2005).  In Hill, this court rejected the insurance company's allegation that discovery should be limited to the claims handler who handled the plaintiff's claim and that employee's immediate supervisor.  Hill, 2015 WL 1280016 at *8.  Incentives and disincentives placed upon claims handlers to handle claims in certain ways are likely to be reflected all the way up the chain of command to those at the head of the claims department.  Id.  The higher up the chain of command improper intent is found, the greater the likelihood that the defendant's actions were the result of company policy or custom, which has a direct bearing on punitive damages.  Roth, 667 N.W.2d at 666.  Therefore, the court holds the requested discovery is relevant.

Here, neither Ms. Schultz nor Sentinel inform the court how many persons are in the chain of command in between the employees whose personnel files Sentinel has agreed to produce up to the head of Sentinel's

claims department.  There could be one such employee, there could be several.
Without such information, the court cannot conclude that the production of
those personnel files would be unduly burdensome.  It is Sentinel's burden to
show that this relevant discovery should not be had.  It has not carried its
burden.  Accordingly, the court grants Ms. Schultz's request as to requests for
production numbers 4 and 5.

Sentinel states that, in an effort to resolve this discovery dispute, it
offered to produce an affidavit from a Hartford senior manager who would state
that employees' compensation is not tied to claims decisions and that there is
no financial incentive to deny claims.  See Docket No. 22 at pp. 2-3, ¶ 8.
Sentinel has not, in fact, filed such an affidavit in response to this motion.
Moreover, Ms. Schultz is not under any obligation to accept what amounts to
Sentinel's "stipulation" to a crucial fact in her bad faith case.  She is entitled to
prove her facts, and is therefore entitled to seek discovery necessary to prove
her facts.

### 5.    Requests for Production of Documents No. 7

Ms. Schultz's request for production number 7 stated:

Produce a copy of any claims files, including any claim forms
completed, correspondence to and from your insured,
correspondence to and from any other person or entity related to
the hail damage claim, and any internal business notes, log
entries, valuations, or reserves that pertain to claims where
Sentinel initially determined that there was property damage
covered under an insurance policy with Sentinel, but where
Sentinel later claimed that the previously identified damage was
not covered under the policy.  You may redact or withhold social
security numbers, health and life insurance, condition, or
treatment information, and bank, credit card, or other financial
account numbers for any person.

24

See Docket No. 20-1 at p. 24.  Sentinel asserted boilerplate objections that the request was irrelevant, overly broad and unduly burdensome.  Id.  It also objected that the request sought confidential information on numerous insureds.  Id.

Although Sentinel made its response to Ms. Schultz's discovery request before the district court had entered its protective order, that protective order has now been issued.  Sentinel does not explain in its brief on Ms. Schultz's motion to compel why that protective order is insufficient to protect the confidential information on its other insureds.  Sentinel has not moved the court for a protective order on this request nor has it produced the requested documents.

Sentinel claims that the only way to respond to this request is to manually search thousands, if not tens of thousands, of claims files.  See Docket No. 24 at p. 2, ¶ 6.  This is so, Sentinel claims, because it does not track claims by the criteria stated in request for production number 7.  Id.  Also, Sentinel points out that the request is not limited by time period or geographic location.  Sentinel also asserts the request is not limited by type of claim.  See Docket No. 25 at p. 13.  This is patently untrue—it is limited to property claims resulting from hail damage.  See Docket No. 20-1 at p. 24.  Sentinel damages its credibility by not carefully evaluating what it represents to be true in arguments to the court.

Ms. Schultz responds by pointing out the relevancy of the request—she is seeking evidence of Sentinel claims handled similarly to hers.  Then

Ms. Schultz points out the limited nature of the request:  the request is limited to *property claims* involving *hail damage* where Sentinel *first agreed there was covered damage*, and *later retracted coverage* and asserted the damage was not covered by its insurance policy.  Finally, Ms. Schultz suggests a search methodology for Sentinel that would narrow substantially the claims files it would have to manually examine:  (1) first search for hail claims that were denied; (2) of that subset, Sentinel could then search within the results for hail claims where a payment was made; and (3) finally, of that subset, Sentinel could search for files where the denial of coverage came *after* the initial payment was made.  See Docket No. 27 at pp. 14-15.

The information requested by Ms. Schultz is highly relevant to her claims.  Furthermore, Ms. Schultz has suggested a search methodology that rebuts Sentinel's assertion that it would have to manually search thousands of files.  The court will grant Ms. Schultz's motion to compel as to request for documents number 7 in that it will order Sentinel to search its claims database in the method outlined by Ms. Schultz.  Any claims files responsive to the request must then be produced.  Sentinel may designate them "confidential" pursuant to the protective order issued in this case if they are found to contain sensitive data not easily able to be redacted.  Sentinel's argument as to time frame is well-taken.  The court limits its order to Sentinel to claims files where the claim was first made within the last ten years from the date of this opinion.

If Sentinel runs the search suggested by Ms. Schultz and finds no responsive claims files, or if the search suggested by Ms. Schultz still results in

26

the identification of "thousands if not tens of thousands" of files, Sentinel shall do two things: (1) file a response to Ms. Schultz's discovery request signed under oath stating that no files were identified or, alternatively, that thousands of files were identified; and (2) allow Ms. Schultz to take the deposition of Sentinel's employee or agent most knowledgeable about how claims files are tracked and what is and is not searchable within the database maintained by Sentinel.

Sentinel suggests that the information called for by interrogatory number 24 is duplicative of the documents called for by request number 7 and, for this additional reason, request number 7 should be denied. This is not accurate. Interrogatory number 24 asks for information about court cases filed. Request number 7 calls for claims files matching her alleged fact pattern. Court cases were most probably *not* filed in connection with the vast majority of the claims files requested in number 7. That is because the amount of the claim itself is typically so small that the gargantuan time and effort required to litigate a bad faith action is usually seen, by the insured and by lawyers consulted by the insured, as not worth the effort. Sentinel's invitation to deny request number 7 is, therefore, rejected by the court.

### 6.    Requests for Production of Documents Nos. 8 and 9

Ms. Schultz's request for production number 8 stated as follows:

> Produce any and all documents relating to regulatory actions, including but not limited to suspension or revocation proceedings, Market Conduct Examinations, Cease and Desist Orders, Consent Orders, reports of Examinations, Corrective Orders or Corrective Action Plans relating to Sentinel's property claims handling from the past ten (10) years to the present. This Request is not limited

27

> to South Dakota. You may redact or withhold social security
> numbers, health and life insurance, condition, or treatment
> information, and bank, credit card, or other financial account
> numbers of any person.

See Docket No. 20-1 at p. 25. Sentinel asserted boilerplate objections that the request was irrelevant, overly broad and unduly burdensome. It then self-limited the request to the state of South Dakota (contrary to the request itself), and stated that no regulatory actions against Sentinel had occurred in ten years. Id.

Ms. Schultz's request for production number 9 stated as follows:

> Provide copies of any Department of Insurance consumer
> complaints involving Sentinel from the past ten (10) years to
> present. This request is not limited to South Dakota. You may
> redact or withhold social security numbers, health and life
> insurance, condition, or treatment information, and bank, credit
> card, or other financial account numbers of any person.

See Docket No. 20-1 at p. 25. Sentinel asserted boilerplate objections that the request was irrelevant, overly broad and unduly burdensome. It then self-limited the request to the state of South Dakota (contrary to the request itself), and stated that no consumer complaints against Sentinel had been made to the South Dakota Department of Insurance in the last ten years. Id.

As with interrogatory number 24, information about regulatory actions and consumer complaints is not a new issue in bad faith litigation in this district. Lillibridge, 2013 WL 1896825 at *13; Lyon, 2011 WL 124629 at *15; McElgunn, Civ. No. 06-05061 Docket No. 206 at p. 14 (D.S.D. 2008); Beyer, 266 F.R.D. at 339. This information is relevant for the same reason the information about past bad faith claims against Sentinel is relevant: it may

28

tend to show a pattern or practice of business conduct by Sentinel that shows it denied claims it knew were covered, or that it acted with reckless disregard in denying such claims.  Lillibridge, 2013 WL 1896825 at *13; Beyer, 266 F.R.D. at 339.

Sentinel asserts that these requests are overbroad because they are not limited geographically, they are not limited to the type of insurance product involved, and they are not limited to homeowners insurance policies.  As to the nationwide scope and the distinction between homeowners and commercial insurance policies, Sentinel offers no reasons to limit its response either geographically or only to homeowners policies.  As Ms. Schultz points out elsewhere, there is currently a bad faith claim pending against Sentinel in Colorado that arises out of a commercial property insurance policy, so there is no reason to believe bad faith practices never occur in connection with commercial policies.  See Docket No. 27 at p. 23 (citing Building On Our Best LLC v. Sentinel Ins. Co., 2015 WL 7014445 (D. Colo. Nov. 12, 2015)).  Sentinel's assertion that the requests are not limited to the type of insurance product involved is simply not true:  request number 8 is specifically limited to Sentinel's handling of property claims.  The court will similarly limit request number 9 to consumer complaints concerning property claims.

With regard to request number 9, Sentinel represents that it maintains a database with information about consumer complaints going back to August, 2012.  See Docket No. 25 at p. 17.  With regard to information for these approximately last four years, Sentinel states it can give Ms. Schultz the type of

complaint, the method of complaint, the date of the complaint, the reason for the complaint, and the resolution of the complaint.  Id. at p. 18.  Sentinel self-limits its response to "homeowners" insurance complaints.  Id.  Sentinel says data from its pre-August 2012 database has been archived and casts doubt on whether the data is still searchable or accessible.

The court grants Ms. Schultz's motion to compel Sentinel to respond to requests number 8 and 9.[5]  Sentinel may limit its responses to only those regulatory actions and consumer complaints involving property insurance, but it may not limit its responses to only "homeowners" insurance.  Furthermore, Sentinel is ordered to search its pre-August 2012 database to attempt with due diligence to extract the data from that database for the approximately six years prior to August, 2012.  If Sentinel is unable to extract any information from its earlier database, it must do two things:  (1) file a response under oath to request number 9 stating what efforts it made to extract the information and that the efforts were unsuccessful; and (2) allow Ms. Schultz to take the deposition of Sentinel's employee or agent most knowledgeable about the pre-August 2012 database and what is and is not searchable within the archived database maintained by Sentinel.

---

[5] Ms. Schultz states that after Sentinel filed its brief in opposition to the instant motion to compel on May 9, it then produced documents responsive to request number 8 on May 16, 2016.  See Docket No. 27 at p. 21, n. 19.  However, it is unclear to the court whether Sentinel limited its production of documents responsive to request number 8 to only homeowners' policies.

### 7.     Requests for Production of Documents Nos. 10-13

Ms. Schultz's requests for production numbers 10, 11, 12, and 13 all

seek documents from persons who conducted claims investigations for

Sentinel.  The requests state:

> Produce any and all documents, including pictures and reports,
> relating to every investigation conducted by [Tom Severson, Mike
> Martin, Jerry Vander Plaats, and Stanley Johnson/Donan
> Engineering] within the past ten (10) years on behalf of Sentinel
> until the present.  This request is not limited to South Dakota. You
> may redact or withhold social security numbers, health and life
> insurance, condition, or treatment information, and bank, credit
> card, or other financial account numbers of any person.

See Docket No. 20-1 at pp. 25-26. Sentinel asserted boilerplate objections that

these requests were irrelevant, overly broad and unduly burdensome.  Id.  It

then asserted that Severson, Martin, Vander Plaats, and Johnson were not

employees of the Hartford.  Id.

Sentinel later filed supplemental responses to Ms. Schultz's request

numbers 10-13.  As to number 10, Sentinel stated that "there are no previous

claims where Tom Severson was retained by Sentinel as an independent

adjuster and thus no documents exist which are responsive to this request."

See Docket No. 20-2 at p. 4.  As to request number 11, Sentinel stated "that it

will produce documents from a previous claim where Mike Martin was retained

by Sentinel as an independent adjuster."  Id.  As to number 12, Sentinel stated

"that it will produce documents from the two previous claims where Jerry

Vander Plaats was retained by Sentinel as an independent adjuster."  Id. at

pp. 4-5.  As to number 13, Sentinel stated "that there are no previous claims

31

where Stanley Johnson or Donan Engineering were retained by Sentinel and thus no documents exist which are responsive to this request." Id. at p. 5.

When the parties met to discuss requests 10-13, Ms. Schultz voluntarily agreed to reduce the time period for which responsive documents were sought from 10 years to 5 years. See Docket No. 20-3 at p. 2. Also, through independent research of her own, Ms. Schultz had discovered that Donan Engineering had been hired by Sentinel as its investigator in a bad faith action pending in Colorado. See Docket No. 19 at p. 34 (citing Building On Our Best LLC v. Sentinel Ins. Co., 2015 WL 7014445 (D. Colo. Nov. 12, 2015). After advising Sentinel of her discovery, Sentinel now responds by stating that it cannot produce files in which it hired Donan because there are thousands of such files and it would be too burdensome to produce all of them. See Docket No. 25 at p. 19.

The affidavit submitted by Gloria Garcia (Sentinel's representative) in opposition to Ms. Schultz's motion to compel, addresses Request for Production No. 13 in ¶ 7 as follows:

> With respect to Request No. 13, Donan is not a contracted vendor of Hartford (or Sentinel), so Defendant does not maintain centralized data regarding this company. Donan has informed me that it maintains reports of claims on which it has been hired dating back to January, 2015, so this information can be obtained directly from Donan. However, upon information and belief, there are thousands of claims nationally in which Donan was hired to investigate, rendering any review of the claims extremely burdensome. *In addition, to respond to this request, each claim file would need to be reviewed in order to determine whether Sentinel was the underwriting company.*

(Emphasis added).  See Docket 24, p. 2 at ¶ 7.  This affidavit indicates the "thousands" of national claims which Donan has been hired to investigate includes claims from companies other than Sentinel/Hartford and that the difficulty comes in sorting the Sentinel/Hartford files from the others.  But in its brief, Sentinel states it has hired Donan thousands of times nationally, rendering any review of the claims extremely burdensome.  Docket 25 at p. 19. (Emphasis added).   Sentinel cannot have it both ways.  The court finds Sentinel has not carried its burden to show that producing the documents requested by request number 13 is unduly burdensome.

In addition, Sentinel suggests that Ms. Schultz should go to Donan directly and ask for the documents.  Sentinel could clearly ask Donan to give Sentinel a list of investigations Donan has done for Sentinel in the last five years.  Since Sentinel has the legal right and ability to ask for these documents, the documents are within Sentinel's "possession, custody or control."  The court therefore grants Ms. Schultz's motion to compel as to request number 13 as follows.  Sentinel is ordered to request the responsive documents, or a list, from Donan.  If fully responsive documents for the entire five-year period cannot be produced, Sentinel must serve a response to Ms. Schultz to request number 13 signed under oath explaining exactly what duly diligent efforts it and Donan made to retrieve the documents and why fully responsive documents could not be gathered.

As to requests 10-12, Ms. Schultz points out that Sentinel appears to be self-limiting its response to her requests by providing only investigation

documents that pre-date the June, 2014, date of Ms. Schultz's own claim ("previous claims").  The court likewise finds Sentinel's responses to these three requests to be somewhat unclear.  Therefore, the court also grants Ms. Schultz's motion to compel as to requests for production of documents 10-13 in that each response to each request should include documents generated from the five years previous to the date of this order (i.e. going back to June, 2011).

## CONCLUSION

Based on the foregoing law, facts and analysis, it is hereby

ORDERED that plaintiff Lucille Schultz's motion to compel [Docket No. 18] is granted in part and denied in part as described more fully in the body of this opinion.  It is further

ORDERED that defendant Sentinel Insurance Company shall produce to Ms. Schultz the discovery ordered herein within 30 days from the date of this order.  Finally, it is further

ORDERED that Ms. Schultz may, but is not required to, submit an application for fees and costs in connection with this motion in accordance with FED. R. CIV. P. 37.  Any such application shall be made no sooner than 15 days from the date of this order and no later than 21 days.  If such application is made, Sentinel may file a response thereto within 14 days.  Any reply from Ms. Schultz may be filed within 14 days thereafter.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).   Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED June 3, 2016.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge